**ALLSTATE INSURANCE CO.,**
**Appellant–Defendant,**

v.

**Jennifer SMITH, Appellee–Plaintiff.**

**No. 45A03–9503–CV–92.**

Court of Appeals of Indiana.

Oct. 18, 1995.

John E. Hughes, Hoeppner, Wagner & Evans, Valparaiso, for Appellant.

Daniel B. Vinovich, Hilbrich, Cunningham & Schwerd, Highland, for Appellee.

## OPINION

STATON, Judge.

In this insurance subrogation action, Allstate Insurance Company ("Allstate") appeals from an order of the trial court granting summary judgment in favor of Jennifer Smith ("Smith"). Allstate presents one (restated) issue for appellate review: whether the trial court erred in granting Smith's summary judgment motion.

We affirm.

The undisputed facts reveal that on September 7, 1993, Smith was injured in an accident while a passenger in the vehicle of Edward P. Extin, Jr. Because Extin was insured by Allstate, Allstate paid medical expenses on Smith's behalf in the amount of $809.42. Smith subsequently received a $4,500 settlement from the party at fault in the accident. Allstate demanded full subrogation for the medical payments made on Smith's behalf. Thereafter, Smith filed this declaratory judgment action to determine the amount of recovery due Allstate.

Both parties filed motions for summary judgment. The trial court granted Smith's motion on Count I of her complaint, concluding that as a matter of law, IND.CODE § 34-4-33-12 (1993) required the reduction of Allstate's recovery by a pro rata share of Smith's attorney fees.[1] It is from this order that Allstate appeals.

When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Construction Co., Inc.* (1993), Ind. App., 609 N.E.2d 1123, 1127, *trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.;* Ind.Trial Rule 56(C). In the context of cross-motions for summary judgment, the trial court must deal with each motion separately, construing the facts and inferences to be drawn therefrom in a light most favorable to the non-moving party. *Ace Rent–A–Car, Inc., v. Indianapolis Airport Authority* (1993), Ind.App., 612 N.E.2d 1104, 1106, *trans. denied.* If the facts are undisputed, our task is to determine the law applicable to the undisputed facts, and whether the trial court correctly applied it. *United Farm Bureau Mutual Insurance Co. v. Steele* (1993), Ind.App., 622 N.E.2d 557, 560, *reh. denied.* The judgment of the trial court will be affirmed if it is sustainable on any basis. *Indiana Board of Public Welfare v. Tioga Pines* (1993), Ind., 622 N.E.2d 935, 940, *cert. denied,* —— U.S. ——, 114 S.Ct. 1302, 127 L.Ed.2d 654.

Allstate claims that application of the Comparative Fault Act, and specifically IC 34-4-33-12's attorney fees provision, was inappropriate in this case. Instead, Allstate argues that IND.CODE § 34-4-41-1 *et seq.,* regarding subrogation of insurers in personal injury actions, is applicable.[2] Allstate's argument hinges on the construction of these statutes. When we consider two statutes relating to the same subject matter, we read the statutes *in pari materia,* and we attempt to harmonize and give effect to both. *Althaus v. Evansville Courier Co.* (1993), Ind. App., 615 N.E.2d 441, 444, *reh. denied.* However, if the statutes cannot be recon-

1. The trial court entered summary judgment in favor of Allstate on Counts II and III of Smith's complaint, in which Smith sought additional attorney fees and punitive damages. The trial court otherwise denied Allstate's summary judgment motion.

2. Allstate urges the general applicability of Chapter 41 on the premise that IC 34-4-41-3 requires

the filing of a lawsuit before IC 34-4-41-4 would reduce Allstate's subrogation claim. As discussed *infra,* we agree with Allstate that its subrogation claim is governed by Chapter 41. However, we reject the remainder of Allstate's argument based on our interpretation of IC 34-4-41-3.

ciled, the more detailed and specific statute prevails as to the subject matter it covers. *Id.* In making this determination, we presume words appearing in the statutes were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth* (1992), Ind.App., 590 N.E.2d 154, 157, *trans. denied.*

Both parties agree that IC 34–4–33–12 ("Section 12") and IC 34–4–41–1 *et seq.* ("Chapter 41") apply to the same subject matter; that is, insurers seeking subrogation from the proceeds of personal injury actions filed by their insureds. However, the parties disagree as to which governs the proceeds of Smith's tort claim.

Chapter 41 governs the subrogation of insurers in personal injury actions. Specifically, Chapter 41 applies:

to an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement or judgment resulting from a legal proceeding commenced by an insured against a third party legally responsible for personal injury for which payment is made by the insurer.

IC 34–4–41–3. Section 4 of Chapter 41 requires an insurer asserting subrogation rights to pay a pro rata share of the costs and expenses of asserting a personal injury claim against a third party. IC 34–4–41–4.

In comparison, Section 12 is part of the Comparative Fault Act, and provides in relevant part:

If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exist in respect to a claim for personal injuries or death and the claimant's recovery is diminished:

(1) by comparative fault; or

(2) by reason of the uncollectibility of the full value of the claim . . .;

the lien or claim shall be diminished in the same proportion as the claimant's recovery is diminished. The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses.

IC 34–4–33–12.

We believe these statutes can easily be harmonized. By its very language, Section 12 applies only in two specific situations: (1) when the claimant's recovery was diminished by comparative fault; or (2) when the claimant's recovery was diminished by the uncollectibility of the full value of the claim. When the claimant's recovery was not diminished by either comparative fault or uncollectibility, the insurer's rights are governed by Chapter 41, because its provisions apply generally to all insurers seeking subrogation from the proceeds of an insured's personal injury action. IC 34–4–41–3.

Keeping in mind the above analysis, we now examine Smith's claim to determine whether her recovery falls into the specific parameters of Section 12. Our review of the record reveals that Smith failed to offer any evidence to the trial court that would indicate that her settlement with the tortfeasor was diminished by either comparative fault or uncollectibility.[3] Accordingly, Section 12 does not apply to Smith's claim. The trial

---

3. In *DPW, State of Indiana v. Couch* (1992), Ind., 605 N.E.2d 165, the Indiana Supreme Court discussed the availability of a declaratory judgment action to determine the insurer's pro rata reduction under Section 12 when the insured's claim against the tortfeasor was settled prior to trial. The court concluded that:

[I]t is appropriate for the declaratory judgment court to assess, as occurred in this case, whether the claimant was reasonable in reaching a compromise settlement for less than the full damages. Various considerations likely relevant to this determination could include, for example, the risk to the claimant of partial or complete reduction of an award of full damages due to allocation of comparative fault,

limited availability of liability insurance or sufficient assets to pay a resulting judgment, and the presence of factors personal to the plaintiff . . . that could affect the prospects of recovery in the event of protracted litigation.

*Id.* at 168–169.

In *Couch*, the parties presented evidence from which the declaratory judgment court could make a determination regarding the probable reduction due to comparative fault, as well as a determination regarding the reasonableness of the settlement amount. *Id.* at 166–167. No such evidence was presented in the instant case. We believe such evidence is necessary to determine whether the plaintiff's recovery is within the purview of Section 12.

court erred in granting Smith's summary judgment motion on this basis.

■ Having so concluded, we next examine Smith's claim under the general provisions of Chapter 41. As stated above, Chapter 41 applies to "an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement or judgment resulting from a legal proceeding. . . ." IC 34–4–41–3. Based on this language, Allstate argues that recovery under this chapter is limited to proceeds gained through the formal filing of a lawsuit. We reject this conclusion as contrary to the language of the statute and the intent of our General Assembly in enacting it.

It is well settled that when the meaning of a particular phrase or clause in a statute is in doubt, this court should examine the grammatical structure of the phrase or clause in order to determine its meaning. *Hamilton County D.P.W. v. Smith* (1991), Ind.App., 567 N.E.2d 165, 169 (citing *Foremost Life Insurance Co. v. Indiana Department of Insurance* (1980), 274 Ind. 181, 186, 409 N.E.2d 1092, 1096; *First National Bank v. Farmers and Merchants National Bank* (1908), 171 Ind. 323, 340, 86 N.E. 417, 423). In fact, grammatical structure is indicative of legislative intent. *Foremost Life Insurance, supra.*

In the statute at issue, the words "settlement" and "judgment" are separated by the disjunctive "or". Based on this grammatical structure, it is clear that the phrase "resulting from a legal proceeding" does not modify "settlement". The modifier applies only to the term "judgment", which immediately precedes it. The modifier is included only to emphasize that a judgment, like a settlement, is a final determination of the parties' rights. Accordingly, the applicability of Chapter 41 is not limited to settlements that result from the filing of a lawsuit; it applies to the proceeds of any settlement from a third party to which the insurance company claims a subrogation right. It is therefore applicable to Allstate's subrogation claim against Smith.

This result furthers legislative intent in enacting Chapter 41. It is clear from the language of these statutory provisions that the General Assembly sought to ensure that insurance companies were subrogated from the proceeds of personal injury actions even when the insured, and not the insurer, sought recovery from the tortfeasor. To do so prevents double recovery by insureds who are paid by third party tortfeasors after the insurance company has paid the insured's medical expenses. However, in order to avoid a windfall to insurance companies who are subrogated by proceeds that they took no part in procuring from the tortfeasor, the General Assembly required insurers to pay a pro rata share of the insured's attorney fees incurred in gaining the settlement or judgment. It is consistent with this policy to conclude that *any time* an insurance company is subrogated from proceeds gained through the insured's efforts and expenses, the insurance company should pay a portion of those expenses, regardless of whether a lawsuit was actually filed. To conclude otherwise would hinder legislative purpose.

Because Chapter 41 is applicable to the proceeds of Smith's settlement, the trial court was correct in concluding that Allstate's subrogation rights should be reduced by a pro rata share of Smith's attorney fees. IC 34–4–41–4. Summary judgment on Count I of Smith's claim was therefore appropriate.

Affirmed.

HOFFMAN and GARRARD, JJ., concur.