**Dale and Brandy D'ARCHANGEL,**
**Appellants–Plaintiffs,**

**v.**

**ALLSTATE INSURANCE COMPANY,**
**Appellee–Defendant.**

No. 02A05–9406–CV–255.

Court of Appeals of Indiana.

Oct. 11, 1995.

Transfer Denied March 12, 1996.

Roger B. Finderson, David L. Farnbauch, Fort Wayne, for Appellants.

Richard P. Samek, Larry L. Barnard, Miller Carson Boxberger & Murphy, Fort Wayne, for Appellee.

### OPINION

BARTEAU, Judge.

Dale and Brandy D'Archangel appeal from the entry of summary judgment in favor of Allstate Insurance Company and the denial of their own motion for summary judgment. At issue is whether Ind.Code 34–4–41–1, *et seq.*, requires an insurer claiming reimbursement rights to pay a pro rata share of the costs incurred by its insured in asserting a

claim against a third party tortfeasor which the insured settled prior to filing suit.

### FACTS

The facts are undisputed. On October 7, 1992, Dale D'Archangel was involved in an automobile accident. Allstate insured the D'Archangels under an automobile insurance policy that included medical payment coverage. Under that policy, Allstate paid Dale's medical bills in the amount of $4,114.01 and reserved reimbursement rights under the following provision:

> When we [Allstate] pay [medical payments coverage], an insured person's rights of recovery from anyone else become ours up to the amount we have paid. The insured person must protect these rights and help us enforce them.

The D'Archangels retained an attorney for the purpose of initiating a claim against the opposing driver, and a settlement was reached with the driver's liability insurance carrier without the necessity of filing suit. The D'Archangels honored Allstate's reimbursement rights, but sought to apply one-third of the reimbursement amount as Allstate's pro rata contribution to the attorney fees incurred in reaching the settlement. Allstate objected, arguing that it was not required to contribute to the D'Archangels's attorney fees because the D'Archangels did not file suit against the opposing driver. The D'Archangels paid Allstate the full $4,114.01, one-third of which Allstate now holds in trust pending the resolution of this action.

### DISCUSSION

■ Indiana Code 34–4–41–1, *et seq.*, governs the reimbursement of insurers in personal injury actions. Under this Chapter, an insurer claiming subrogation or reimbursement rights

> shall pay, out of the amount received from the insured, the insurer's pro rata share of the reasonable and necessary costs and expenses of asserting the third party claim. These reasonable and necessary costs and expenses include, and are not limited, to the following:
> (1) The cost of depositions.

(2) Witness fees.
(3) Attorney's fees to the lesser of the amount contracted by the insured for the insured's portion of the claim or thirty-three and one-third percent (33⅓%) of the amount of the settlement.

I.C. 34–4–41–4. This statute applies

> to an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement or judgment resulting from a legal proceeding commenced by an insured against a third party legally responsible for personal injury for which payment is made by the insurer.

I.C. 34–4–41–3.

Allstate claims that it is not required to pay a pro rata share of the D'Archangels's attorney fees because suit was not filed, and therefore the settlement did not "result[ ] from a legal proceeding." Quite simply, Allstate posits that had the D'Archangels filed suit before settling, it would be required to pay a portion of their attorney fees. But, since the D'Archangels and the opposing driver's liability carrier settled without the D'Archangels filing a lawsuit, Allstate concludes that the settlement was not the result of legal proceedings and the statute does not apply.

"A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute." *Timothy F. Kelly and Assoc. v. Illinois Farmers Ins. Co.* (1994), Ind.App., 640 N.E.2d 82, 85. In construing the statute, its object and purpose must be considered as well as the effect and consequences of such interpretation. *Id.* (citing *State v. Windy City Fireworks, Inc.* (1992), Ind.App., 600 N.E.2d 555, 558, *adopted on transfer,* (1993), Ind., 608 N.E.2d 699). "When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act." *Id.* (citing *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218, *reh'g denied, trans. denied* ). We presume that the legislature intended its language to be applied logically and in a manner consistent with the statute's underlying policy and goals. *Id.* We en-

deavor to give words in a statute their plain and ordinary meaning, absent a clearly manifested purpose to do otherwise. *Id.*

The crux of Allstate's argument is that the phrase "resulting from legal proceedings" constrains the meaning of the word "settlement" in I.C. 34–4–41–3, to reference only settlements reached after suit is filed. Although what constitutes legal proceedings is not set forth in the statute, Allstate concludes that, to trigger an insurer's obligation under I.C. 34–4–41–4, a settlement must follow the initiation of formal litigation before a court or tribunal.

Allstate's narrow construction of the statute furthers neither the purpose of the statute nor the policy of this state. Under Allstate's interpretation, an insured must file suit in court in order to preserve the right to have the insurer contribute a pro rata share of the attorney fees incurred in negotiating a settlement. Thus, in order to protect his rights under the statute, an insured would have to file a lawsuit that he never intends to reduce to judgment. Such an interpretation would produce results inconsistent with sound policy and would hinder the practical and efficient resolution of disputes.

We find that included within the scope of I.C. 34–4–41 are all proceedings authorized or sanctioned under Indiana law, including the methods of alternative dispute resolution recognized by our Supreme Court.

Alternative dispute resolution methods which are recognized include *settlement negotiations,* arbitration, mediation, conciliation, facilitation, mini-trials or mini-hearings, summary jury trials, private judges and judging, convening or conflict assessment, neutral evaluation and factfinding, multi-door case allocations, and negotiated rulemaking.

*Ind.Alternative Dispute Resolution Rule 1.1* (emphasis added). Settlement negotiation is specifically recognized as an alternative dispute resolution method, and is a legal proceeding as contemplated by our legislature under I.C. 34–4–41–3.[1]

Such a construction is in harmony with Indiana policy and the purpose of I.C. 34–4–41. The policy in Indiana of promoting the settlement of disputes without unnecessary judicial intervention is well-established. *See Fire Ins. Exchange v. Bell by Bell* (1994), Ind.App., 634 N.E.2d 517, 522, *aff'd in part, vacated in part,* 643 N.E.2d 310. Requiring insureds to file lawsuits merely to assure their insurers will contribute a pro rata share of attorney fees would inundate our courts with numerous lawsuits which the plaintiff never intends to reduce to judgment, as well as hinder the amicable and efficient settlement of disputes. Without the assistance of Allstate, the D'Archangels retained counsel and initiated settlement proceedings with the tortfeasor. Once the fruits of their efforts were realized, the D'Archangels honored Allstate's right to reimbursement but asked that Allstate share some of the expense incurred in obtaining the recovery. This is precisely the scenario which I.C. 34–4–41 addresses. And, since the knowledge and expertise of attorneys facilitates the efficient resolution of disputes, it follows that our legislature requires insurers to contribute a pro rata share of the attorney fees incurred in achieving settlement.

The dissent rejects this rationale, and reasons that the phrase "legal proceedings *commenced* by an insured" is "a term of art and implies that a party has initiated a suit in court." Slip op. at 1. However, we cannot agree that "commenced" limits the scope of the statute to only formal proceedings. Prelitigation dispute mediation between parties

---

1. We also note that similar Indiana Code provisions support this interpretation. In construing the meaning of words within a statute, a legislative definition of the same terms in another act upon the same or related subject, though not conclusive, is entitled to consideration. *Merimee v. Brumfield* (1979), Ind.App., 397 N.E.2d 315, 318. Under the statutes governing the indemnification of officers of corporations and financial institutions, our legislature has consistently defined proceedings as:

any threatened, pending, or completed action, suit, or proceeding, whether civil or criminal, administrative, or investigative and whether formal or informal.

I.C. 23–1–37–7; I.C. 23–17–16–7; I.C. 27–1–7.5–7; I.C. 28–13–13–7. Thus, it can be said that our legislature has commonly used the term proceedings in reference not only to formal lawsuits, but informal proceedings as well.

is clearly a legal proceeding despite the fact that the parties have not yet called upon the court to intervene. Similarly, retaining an attorney to pursue a claim against a tortfeasor commences legal proceedings. By employing an attorney to intercede in a dispute either to negotiate settlement or to initiate formal litigation, a party invokes the assistance of an officer of the court, one licensed by our Supreme Court to practice law in this State, to use his legal knowledge and expertise to resolve a dispute. The court sanctions this practice, and the fact that suit is not filed before the dispute is settled does not diminish its effect or validity.

Had the D'Archangels chosen not to proceed against the faulty driver, and opted to limit their recovery to that paid by Allstate, Allstate would have been required to incur its own expenses in exercising its subrogation rights against the tortfeasor. "That being true, [the insurer] should not be able to ride on the insured's coat tails now, without paying for the ride." Appleman, *Insurance Law & Practice*, § 5141 at 285 (1981). As Judge Baker recently opined in a related case, I.C. 34–4–41 "protects against the unjust enrichment of an insurance company benefitted by the efforts of its insured's counsel." *Cook v. Humana Health Care Plan, Inc.* (1994), Ind. App., 636 N.E.2d 166, 168.

Indiana encourages parties to resolve disputes without invoking judicial intervention. In furtherance of this policy, Indiana promotes numerous forms of legal proceedings recognized by our Supreme Court as effective and efficient alternatives to filing suit in courts. The foremost of these legal proceedings is the settlement of disputes through amicable negotiation between parties. This not only benefits the insured, but also the insurer claiming reimbursement rights which enjoys the fruits of the insured's efforts.

### CONCLUSION

■ An insurer claiming reimbursement rights must pay, out of the amount received from an insured, a pro rata share of the reasonable and necessary costs and expenses of asserting a claim against a third party tortfeasor where the claim was settled prior to the insured filing suit against the tortfeasor.

The parties agree that the amount in dispute is an amount equal to thirty-three and one-third percent (33⅓%) of the settlement amount, rather than an amount contracted by the insured for the insured's portion of the claim. *See* I.C. 34–4–41–4(3). Thus, there is no genuine issue of material fact in this matter requiring remand for further proceedings. *See Cook*, 636 N.E.2d at 168. Therefore, the trial court's order granting summary judgment in favor of Allstate is REVERSED, and summary judgment is hereby entered in favor of the D'Archangels.

RUCKER, J., concurs.

SHARPNACK, C.J., dissents with opinion.

SHARPNACK, Chief Judge, dissenting.

I must respectfully dissent. Plain and unambiguous language must be given its apparent and obvious meaning. *Matter of Grissom* (1992), Ind., 587 N.E.2d 114, 116. This is true even if one might suspect or hope that the legislature would amend the statute upon recognizing the effect of the language chosen.

I agree with much of what the majority says regarding the shortcomings of the results of reading the statute as I am convinced it must be read. However, I cannot agree with the majority's revision of the statute. Ind.Code § 34–4–41–3 states that this statute applies:

"to an insurer claiming subrogation or reimbursement rights to the proceeds of a settlement or judgment resulting from a legal proceeding commenced by an insured against a third party legally responsible for personal injury for which payment is made by the insurer."

I.C. § 34–4–41–3. The phrase "resulting from a legal proceeding" clearly limits the phrase "proceeds of a settlement or judgment." Ind.Code § 34–4–41–3. In addition, the word "commenced" is a term of art and implies that a party has initiated a suit in court. In fact, Black's Law Dictionary states that a "civil action in most jurisdictions is commenced by filing a complaint with the court." Black's Law Dictionary 268 (6th ed.

1991). Thus, the legislature's use of the word "commenced" suggests that it intended to limit the statute to those proceedings which have been filed in court.

Furthermore, Black's Law Dictionary defines "legal proceedings" as "all proceedings authorized or sanctioned by law, *and* brought or instituted in a court or legal tribunal, for acquiring of a right or the enforcement of a remedy." Black's Law Dictionary 896 (6th ed. 1991) (emphasis added). This definition demonstrates that "settlement negotiations" are not ordinarily considered to be "legal proceedings."

The majority relies on the Alternative Dispute Resolution Rules to buttress its argument that "legal proceedings" include "settlement negotiations." The preamble of the Alternative Dispute Resolution Rules states:

"These rules are adopted in order to bring some uniformity into alternative dispute resolution with the view that the interests of the parties can be preserved in settings other than the traditional judicial resolution method."

A.D.R. pmbl. Rule 1.1 goes on to state: "Alternative dispute resolution methods which are recognized include settlement negotiations...." A.D.R. 1. The majority relies on this Rule to support its claim that "settlement negotiations" are included in the general description of "legal proceedings", but it fails to consider the limiting language in Rule 1.2. This Rule states: "Alternate dispute resolution methods which are governed by these rules are (1) Mediation, (2) Arbitration, (3) Mini-hearings, (4) Summary Jury Trials, and (5) Private Judges." A.D.R. 1.2. Clearly, settlement negotiations are not governed by the Alternative Dispute Resolution Rules. Thus, I do not think the general reference to "settlement negotiations" in Rule 1.1 may be used to transform them into "legal proceedings."

*Cook v. Humana Health Care Plan, Inc.* (1994), Ind.App., 636 N.E.2d 166, quoted by the majority in this case, involved a legal proceeding arising out of a worker's compensation claim. The issue that prompted the language quoted by the majority was whether the term "a third party legally responsible for personal injury" in I.C. § 34–4–41–3 was limited to tort-feasors or included an employer liable under worker's compensation and the employer's insurer. The conclusion that the term included a liable employer did no damage to the plain language of the statute and gave effect to the expressed intent of the legislature. Consequently, the reference to unjust enrichment quoted by the majority lends no weight to its construction of this statute.

Further, the legislature may well have believed that the cost of an attorney should not be thrust upon the subrogated insurer without its consent where commencement of a legal proceeding would be unnecessary because of settlement and the insured could take into account the subrogation interest of the insurer as an economic factor in the settlement amount that would be acceptable.

In short, the statute clearly does not apply to this case where no legal proceeding had been commenced at the time the settlement was made. The trial court was correct to grant the summary judgment to Allstate, and we should affirm.